IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JERRY COPELAND, JOHN WHITT, and JAMES DUTTON, on behalf of themselves and a class of those similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:20-cv-154 |
| WABASH COUNTY, INDIANA; and the WABASH COUNTY SHERIFF, in his official capacity, | ) ) ) ) | |
| | ) | COMPLAINT – CLASS ACTION |
| Defendants. | ) | |

# CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Introduction**

1. The Wabash County Jail ("the Jail") is old, overcrowded, and understaffed, and as a result it is a place where violence between prisoners is common and dangerous conditions prevail. The conditions in the Jail therefore violate the Eighth and Fourteenth Amendments to the United States Constitution. Declaratory and injunctive relief should be issued to address and remedy the Jail's systemic problems.

**Jurisdiction, venue, and cause of action**

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202, and by Rule 57 of the Federal Rules of Civil Procedure.

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color

of state law, of rights secured by the United States Constitution.

**Parties**

6. Jerry Copeland is an adult person who is currently confined in the Wabash County Jail.

7. John Whitt is an adult person who is currently confined in the Wabash County Jail.

8. James Dutton is an adult person who is currently confined in the Wabash County Jail.

9. Wabash County, Indiana is one of Indiana's ninety-two counties and is located in northern Indiana. Its executive is the Wabash County Commissioners and its fiscal body is the Wabash County Council.

10. The Wabash County Sheriff is the duly elected sheriff of Wabash County, and is sued in his official capacity.

**Class action allegations**

11. This action is brought by plaintiffs on their own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

12. The class is defined as follows:

    all persons currently confined, or who will in the future be confined, in the Wabash County Jail.

13. All the requirements of Rule 23(a) are met in this cause in that:

    a. The class is so numerous that joinder of all members is impracticable. The Wabash County Jail regularly houses more than 100 persons and the membership of the proposed class is constantly changing as prisoners enter and leave the facility.

    b. There are questions of law or fact common to the class: whether conditions in the Wabash County Jail violate the United States Constitution.

    c. The claims of the representative parties are typical of those of the class.

    d. The representative parties will fairly and adequately protect the interests of the class.

14. The further requirements of Rule 23(b)(2) are met in this cause as at all times the defendants

have acted or refused to act in a manner generally applicable to the class, thereby making final injunctive and declaratory relief appropriate with respect to the class as a whole.

15. Undersigned counsel are appropriate persons to be appointed as counsel for the class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure and should be so appointed.

**Legal background**

16. Indiana law provides that the sheriff of a county must "take care of the county jail and the prisoners there." Ind. Code § 36-2-13-5(a)(7).

17. The county commissioners of each Indiana county, as the county executive, have the statutory duty to "establish and maintain a . . . county jail." Ind. Code § 36-2-2-24(a). This includes not only providing a jail, but also keeping it in good repair. *See, e.g.*, *Weatherholt v. Spencer County,* 639 N.E.2d 354, 356 (Ind. Ct. App. 1994).

**Factual allegations**

*Allegations Concerning the Wabash County Jail*

18. The Wabash County Jail ("the Jail") is located in Wabash, Indiana. The current jail was constructed in 1979, with some renovations in 2006.

19. The Jail contains 72 permanent, operational beds.

20. The Jail is linear in structure, with various sized cell blocks containing individual cells and a small area outside of the cells that contains tables and chairs, known as a "day room".

21. The cells that are designed to house more than one prisoner have two beds, arranged on top of one another like bunk beds.

22. Under Indiana law, county jails are periodically inspected by Indiana Department of Correction ("DOC") jail inspectors. The most recent inspection of the Jail was conducted in February of 2019.

23. At the time of the February inspection of the Jail, the DOC's jail inspector noted that on the day of inspection the jail exceeded its rated capacity and that there was not a bed for all the prisoners. At the time of the inspection, the Jail housed 108 inmates, and an additional 64 inmates were being temporarily housed out of county.

24. County Commissioners have in public meetings indicated that the Jail is chronically overcrowded, and that the county urgently needs a new Jail.

25. The Wabash County Jail is above its rated capacity 100% of the time, and has been since at least 2016.

26. A jail facility is deemed to be overcrowded long before it gets to 100% of capacity.

27. This is because, when a jail exceeds 80% of its capacity (and under certain circumstances less than that percentage of capacity), it becomes difficult if not impossible to conduct necessary classification of prisoners much beyond separating men and women.

28. Classification is essential to protect the safety of both prisoners and staff. By way of example only, inmates with mental and physical disabilities should be separated from those without those disabilities, prisoners who are prone to be preyed upon should be separated from predators, and prisoners who have had previous problems with each other should be separated.

29. The overcrowded conditions prevent adequate classification, producing dangerous conditions.

30. As a result of the overcrowding in the Jail, many if not most of the day rooms have bunks installed in them, or house inmates who sleep on plastic "boats" on the floor.

31. This causes a great deal of tension, because the small size of the day rooms means that prisoners have very little space to maneuver around each other.

32. There are not enough seats and tables for inmates to eat their meals, resulting in prisoners

sitting on the floor to eat.

33. Disputes and violence commonly arise among prisoners, due to the lack of secure areas for inmates housed in the day room to store property, disputes over use of the single cell-block shower, and general tensions due to the large number of people in a very small space.

34. There is no outdoor recreational area at the Jail.

35. The indoor recreation room, which is the only recreational space in the facility, is also often used for housing purposes.

36. When they are housed in the recreation room, inmates sleep on the floor in that room, on mats or on plastic boats.

37. There is no toilet or running water in the recreation room, and inmates have been given cups in which to urinate and then dump down a drain in the floor of the room. This is extremely unsanitary, and inmates complain of the smell in the recreation room.

38. Because the recreation room is often used for this purpose, and because of the large number of inmates in the Jail, inmates are not provided regular recreation, a fact that exacerbates tensions in the Jail.

39. Recreation opportunities are extremely important for prisoners as physical exercise is essential to maintain physical and mental health and to relieve the tension that is inevitable in an institutional environment.

40. The opportunity for vigorous physical exercise is even more important in an overcrowded jail, as in such a situation tensions escalate and there is inadequate area within the prisoners' living space to engage in exercise.

41. The library is also sometimes used to house inmates, who sleep on the floor when housed there. There is no access to water or a toilet in the library.

42. When inmates need to use the restroom while housed in the library, they are told to attract the attention of guards. Guards often do not respond quickly, and inmates are forced to wait to relieve themselves.

43. There is insufficient staff at the Jail to adequately monitor the prisoners.

44. Inmates with medical and/or mental health conditions are housed in general population and are not seen in a timely manner if at all.

45. Assaults between prisoners are frequent, aggravated by the overcrowded conditions.

46. The Jail is locked down daily from approximately 11:00 p.m. to 5:00 a.m. While on lockdown and at other times, jail staff frequently do not respond to requests for attention or assistance from prisoners.

47. The only way to alert or contact Jail staff is to bang on the doors of the cell blocks.

48. This is extremely dangerous, as Jail staff are not aware of and cannot intervene in the event of violence among inmates, or in the event of a medical emergency.

49. The lack of meaningful recreation, the overcrowding, and the lack of staff supervision cause continuous tension and dangerous conditions at the Jail.

50. The conditions at the Jail are objectively unreasonable.

*Allegations Concerning the Named Plaintiffs*

Jerry Copeland

51. Plaintiff Jerry Copeland has been incarcerated in the Jail since July of 2019. He was previously incarcerated at the Jail on several occasions, beginning in approximately 1995.

52. Mr. Copeland is currently incarcerated as a pretrial detainee.

53. When Mr. Copeland first arrived at the Jail, he was housed in a holding cell that contained 4 persons. There were no permanent beds in that cell, and the four inmates housed there slept on

mats on the floor. He remained in that cell for approximately one week.

54. Mr. Copeland was then transferred to a segregation cell that housed 4 persons, who slept on four beds arranged in double bunks. He remained in that cell for approximately six weeks.

55. Mr. Copeland was then transferred to cell block 5, where he still remains.

56. Cell block 5 contains 6 individual cells, each with two bunked beds, and a day room.

57. The day room of cell block 5 has two sets of triple-stacked bunk beds installed in it, housing an additional 6 individuals.

58. Mr. Copeland has been housed in one of those 6 beds in the day room since he arrived in cell block 5.

59. Since Mr. Copeland arrived in cell block 5, the 12 beds in the individual cells and the 6 beds in the day room have almost always been full.

60. Mr. Copeland has seen prisoners fighting because of the tensions on the block.

61. Mr. Copeland has only occasionally been offered recreation opportunities.

62. Mr. Copeland has witnessed inmates with mental health conditions being preyed upon by other inmates, because of the lack of effective classification in the Jail.

63. Mr. Copeland has filed grievances concerning the overcrowding at the Jail and the problems that result from this overcrowding.

64. He has thus fully exhausted the Jail's grievance system.

<u>John Whitt</u>

65. Plaintiff John Whitt has been incarcerated in the Jail since October of 2019. He was previously incarcerated at the Jail on several occasions, beginning in approximately 2005.

66. Mr. Whitt is currently incarcerated as a pretrial detainee.

67. When Mr. Whitt first arrived at the Jail, he was housed in cell block 4. That cell block had

3 individual cells, with two beds in each, and a day room that contained 6 triple-bunked beds.

68.	Mr. Whitt was then transferred to the Miami County Jail, due to overcrowding in the Wabash County Jail.

69.	Mr. Whitt was transferred back to the Wabash County Jail, where he was housed in cell block 5 for approximately 2 months.

70.	Mr. Whitt was then moved to cell block 4, where he sleeps on one of the triple-bunked beds in the day room, where he remains.

71.	Mr. Whitt has seen prisoners fighting because of the tensions on the block.

72.	Mr. Whitt has only occasionally been offered recreation opportunities.

73.	Mr. Whitt has witnessed inmates with mental health conditions being preyed upon by other inmates, because of the lack of effective classification in the Jail.

74.	Mr. Whitt has filed grievances concerning the overcrowding at the Jail and the problems that result from this overcrowding.

75.	He has thus fully exhausted the Jail's grievance system.

<u>James Dutton</u>

76.	Plaintiff James Dutton has been incarcerated in the Jail since October of 2019.  He was previously incarcerated at the Jail on several occasions, beginning in approximately 1995.

77.	Mr. Dutton is currently incarcerated as a post-conviction prisoner.

78.	When Mr. Dutton first arrived at the Jail, he was housed in the recreation room, which at that time housed approximately three other people.  Those inmates, including Mr. Dutton, slept on mats on the floor.

79.	Mr. Dutton was then transferred to the Miami County Jail, due to overcrowding in the Wabash County Jail.

80. Mr. Dutton was then transferred back to the Wabash County Jail, where he was again initially housed in the recreation room, on a mat on the floor.

81. Mr. Dutton was then transferred to cell block 5, where he was initially housed in the day room.

82. After approximately one month, he was moved to a bed within in a cell in cell block 5.

83. Since Mr. Dutton arrived in cell block 5, the 12 beds in the individual cells and the 6 beds in the day room have almost always been full.

84. Mr. Dutton has seen prisoners fighting because of the tensions on the block.

85. Mr. Dutton has only occasionally been offered recreation opportunities.

86. Mr. Dutton has witnessed inmates with mental health conditions being preyed upon by other inmates, because of the lack of effective classification in the Jail.

87. Mr. Dutton has filed grievances concerning the overcrowding at the Jail.

88. He has thus fully exhausted the Jail's grievance system.

*Concluding Allegations*

89. The named plaintiffs are concerned not only for their own safety, but for the health and safety of other prisoners who are similarly injured by the conditions in the Jail.  They believe that all prisoners are negatively affected by the overcrowding, lack of sufficient staff, lack of recreation, and the problems that result from these conditions.

90. The defendants have been on notice for several years concerning the deficiencies in the Jail but have failed to take the necessary steps to resolve the overcrowding and related problems.  At all times they have acted in a deliberate and purposeful manner.

91. The conditions in the Jail result in the denial of basic human needs and the minimal civilized measures of life's necessities and amount to punishment.

92. Wabash County, Indiana has failed in its mandatory duty to establish and maintain the Jail in a constitutional manner.

93. The Wabash County Sheriff has failed in his mandatory duty to take care of the Jail and the prisoners detained there in a constitutional manner.

94. The actions and inactions of the defendants are causing the named plaintiffs and the putative class irreparable harm for which there is no adequate remedy at law.

95. At all times the defendants have acted and have refused to act under color of state law.

**Legal claim**

96. The conditions of the Wabash County Jail violate the Fourteenth Amendment to the United States Constitution as applied to pretrial detainees and the Eighth Amendment to the United States Constitution as applied to convicted prisoners.

**Request for relief**

    **WHEREFORE**, the plaintiffs request that this Court:

1. Accept jurisdiction of this case and set it for hearing.

2. Certify this case as a class action with the class as defined above.

3. Declare that the actions and inactions of the defendants violate the United States Constitution for the reasons noted above.

4. Enter an injunction requiring the defendants to take all steps necessary to ensure that the conditions of confinement at the Wabash County Jail comply with the United States Constitution.

5. Award the plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

6. Award all other proper relief.

                                              */s/ Stevie J. Pactor*

Stevie J. Pactor

*/s/ Kenneth J. Falk*
Kenneth J. Falk

ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
spactor@aclu-in.org
kfalk@aclu-in.org

*Attorneys for the plaintiffs and the putative class*