UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JERRY COPELAND, JOHN WHITT, and JAMES DUTTON, on behalf of themselves and a class of those similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>WABASH COUNTY, INDIANA; and the WABASH COUNTY SHERIFF, in his official capacity,<br><br>    Defendants. | Case No. 3:20-CV-154-JD-MGG |

## OPINION AND ORDER

On February 19, 2020, the Plaintiffs filed a class action complaint for declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983, seeking to enjoin the practices of Wabash County Jail and the Wabash County Jail Sheriff in his official capacity. [DE 1]. The Plaintiffs, on behalf of themselves and others similarly situated, have sued Wabash County and the Wabash County Sheriff ("Defendants"), alleging that the conditions of confinement resulting from the overcrowded and understaffed Wabash County Jail violate the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiffs also filed a Motion for Class Certification pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. [DE 3]. The Defendants oppose certification of the Plaintiffs' proposed class. For the reasons stated herein, Plaintiffs' Motion for Class Certification is denied.

### I.   FACTUAL BACKGROUND

The Wabash County Jail is located in Wabash, Indiana and was constructed in 1979, with some renovations completed in 2006. [DE 1 at 3]. The Plaintiffs allege that the jail is "old,

overcrowded, and understaffed, and as a result it is a place where violence between prisoners is common and dangerous conditions prevail." *Id*. at 1. The jail contains 72 permanent, operational beds. *Id*. at 3. County jails are periodically inspected by the Indiana Department of Correction jail inspector. *Id.* During the most recent inspection, the jail inspector noted that the jail exceeded its rated capacity and that there were not enough beds for all the prisoners being held in the jail. *Id.* at 4. The Plaintiffs allege that at the time of the inspection, Wabash County Jail housed 108 inmates, and an additional 64 inmates were being temporarily housed out of county. *Id.* Plaintiffs also allege that the jail is above its rated capacity 100% of the time and has been above capacity since 2016. *Id*. As a result of the allegedly overcrowded conditions, adequate classification of the inmates, which the Plaintiffs argue is essential to protecting the safety of both prisoners and staff, is impossible since there is no room to keep inmates with mental and physical disabilities separate from inmates without disabilities. *Id*. at 4. The Plaintiffs allege that there are not enough seats or tables for the inmates to sit at during mealtimes, so many inmates sit on the floor to eat their food. *Id*. at 4-5. There is no outdoor recreational area at the jail, only an indoor recreation room which is regularly used to house inmates. *Id*. at 5. Since there is no bathroom in the recreation room, inmates are "given cups in which to urinate and then dump down a drain in the floor of the room," which is unsanitary, and inmates complain of the smell. *Id*. As a result of the overcrowded conditions, the Plaintiffs also allege that assaults between prisoners are frequent and inmates with medical or mental health conditions are housed in the general population. *Id*. Finally, the Plaintiffs allege that there is insufficient staff at the jail to adequately monitor all of the inmates. *Id*.

Plaintiff Jerry Copeland has been incarcerated in the jail since July of 2019. *Id.* at 6. He alleges that when he first arrived, there were no permanent beds in his assigned cell. He, along with three other inmates, had to sleep on mats on the floor. *Id.* at 6-7. Mr. Copeland has witnessed

prisoner fighting because of tensions on the jail block and claims that he is only occasionally offered recreation opportunities. *Id.* at 7. He has also witnessed inmates with mental health conditions being preyed upon by other inmates due to the lack of effective prisoner classification in the jail. *Id.* Plaintiff John Whitt has been incarcerated in the jail since October of 2019. *Id.* at 8. Mr. Whitt claims that when he was transferred back to the Wabash County Jail, he slept on one of the triple-bunked beds in the day room, where he remains. *Id.* He has also witnessed prisoner fighting due to increased tension among the inmates and is only offered occasional recreation opportunities. *Id.* He similarly alleges that he has witnessed inmates with mental health conditions being preyed upon by other inmates, because of the lack of effective classification in jail. *Id.* Finally, Plaintiff James Dutton was incarcerated in the jail from October 2019 to February 2020. [DE 14 at 6]. Two days after this class action complaint was filed, Mr. Dutton was transferred out of the jail. *Id.* Mr. Dutton claims that when he first arrived at the jail, he was housed in the recreation room, where he and three other inmates slept on mats on the floor. *Id.* at 8-9. Mr. Dutton witnessed prisoner fighting due to high tension among the inmates and was not offered regular recreation opportunities. *Id.* Each of the plaintiffs claim they have fully exhausted the jail's grievance system. [DE 1 at 7-9].[1]

Collectively, the Plaintiffs claim that the overcrowding of the jail produces dangerous conditions, which results in the denial of basic human needs and minimal civilized measures of life's necessities amounting to punishment. *Id.* at 9. Disputes and violence commonly arise among prisoners due to the lack of secure areas for inmates housed in the day room to store their property,

---

[1] The Defendants' supplied the grievances filed by the Plaintiffs in Exhibit B. The Exhibit indicates that Plaintiff Copeland filed a grievance about the inability to attend church due to lock down, the amount of food provided, the overcrowding of the jail, and the lack of recreation. Plaintiff Dutton submitted a grievance about the overcrowding and the roof. Finally, Plaintiff Whitt filed a grievance about the overcrowding of the jail leading to altercations, the roof leaking, the lack of outdoor recreation, the food not having a sufficient amount of calories, the lack of proper classification within the jail, and the lack of recreation. [DE 14-4].

due to disputes over use of the single cell-block shower, and general tensions due to the large number of people being held in a very small space. *Id.* at 5. The Plaintiffs also alleged that, due to overcrowding, inmates have decreased access to the indoor recreation room, which is the only recreational space in the facility. *Id.* Lack of recreation, in turn, exacerbates tensions in the jail and assaults between prisoners are frequent. *Id.* at 6. The Plaintiffs further claim that there is insufficient staff at the jail to adequately monitor the prisoners, and inmates with medical and mental health conditions are not seen in a timely manner. *Id.*

On February 19, 2020, the Plaintiffs filed a Motion for Class Certification and define the class as "all persons currently confined, or who will in the future be confined, in the Wabash County Jail." [DE 3 at 1]. The Plaintiffs ask, on behalf of themselves and the proposed class, this Court to enter an injunction requiring the Defendants to take all steps necessary to ensure the conditions of confinement at the Wabash County Jail comply with the United States Constitution [DE 1]. County Defendants in their response opposed Plaintiffs' Motion for Class Certification. [DE 14]. In particular, the Defendants argue that the commonality and typicality requirements set forth in Rule 23(a) are not satisfied. The Defendants also argue that Plaintiff Dutton is not within the proposed class he seeks to represent and also challenge his standing to seek injunctive relief.

## II. ANALYSIS

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions in federal court. Rule 23(a) also ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). A party seeking class certification must first satisfy each of the requirements of Rule 23(a), showing that:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If each of these prerequisites are met, a court must also find that at least one of the subsections of Rule 23(b) is satisfied. In this case, the Plaintiffs seek class certification under sub-section (b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Plaintiffs, as the party seeking class certification, assume the burden of demonstrating that certification is appropriate. *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984). And "[f]ailure to meet any of the Rule's requirements precludes class certification." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). Finally, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . ." *Orr v. Shicker*, 953 F.3d 490, 500 (7th Cir. 2020) (quoting *Wal-Mart*, 564 U.S. at 350).

The Defendants set forth three arguments opposing class certification: (1) Plaintiff Dutton is not within the class he purports to represent; (2) Plaintiff Dutton lacks standing to seek injunctive relief; and (3) there is no proof of commonality or typicality of the jail conditions. [DE 14]. The Court addresses each argument in turn.

### A. Plaintiff Dutton

The Defendants argue that Plaintiff Dutton lacks standing to seek injunctive relief. They also argue that Plaintiff Dutton is not a member of the proposed class, which is currently defined as "all persons currently confined or who will be in the future confined in the Wabash County Jail" because he is no longer being held in the jail. Thus the issue is whether Plaintiff Dutton, who filed the Complaint in this case while he was an inmate of the jail, but whose individual

5

claims for relief are now moot due to his release from the jail, has standing to pursue the motion for class certification and may adequately represent the proposed class. The Court addresses the standing argument first.

### 1. Plaintiff Dutton's Standing

"Article III requires that the plaintiff has suffered an 'injury in fact' which is fairly traceable to the challenged action of the defendant and 'likely,' as opposed to merely 'speculative,' to be 'redressed by a favorable decision.'" *Payton v. Cty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002). The Court notes that this inquiry as to Plaintiff Dutton's standing is a separate inquiry from his entitlement to relief or his ability to satisfy the Rule 23 criteria. *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008). Even though Plaintiff Dutton is no longer being held as an inmate in the Wabash County Jail, the Court finds that he still has standing to pursue this suit. The Seventh Circuit addressed a factually similar situation in *Olson v. Brown*, 594 F.3d 577 (7th Cir. 2010) where it found that the 'inherently transitory exception' to the mootness doctrine under the standing requirements of Article III applied to an inmate who was originally held in a county jail but was released prior to the court considering the motion for class certification. For this exception to apply, there are two requirements: "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Olson*, 594 F.3d at 582 (citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11 (1975)). The Court went on to explain why the exception applied to the plaintiff:

> "The duration of his claim was at the discretion of the Indiana Department of Correction. An individual incarcerated in a county jail may be released for a number of reasons that he cannot anticipate. [The Defendant's] transfer by the Indiana Department of Correction just thirteen days after he filed for class certification in this suit illustrates one such unpredictable occurrence that could unexpectedly moot

6

> a claim for a county jail inmate. This uncertainty is precisely what makes the 'inherently transitory' exception applicable in this case."

*Id*. at 583. The Court also found that his case met the second requirement of the inherently transitory exception recognizing that there would be a constant class of persons suffering the deprivation—the other inmates held in the jail. *Id*.

The Defendants argue instead that the holding in *Robinson v. City of Chicago*, 868 F.2d 959, 967 (7th Cir. 1989) precludes this finding, but this Court notes that Plaintiff Dutton is arguing under the "inherently transitory" exception to the standing requirements and not the "capable of repetition yet evading review" exception. The holding in *Robinson* applies to arguments made under the latter exception, not the former.

> "As *Gerstein* and *Zurak* both explicitly point out, the length of incarceration in a county jail generally cannot be determined at the outset and is subject to a number of unpredictable factors, thereby making it inherently transitory. While the ultimate length of confinement does affect the applicability of the 'inherently transitory' exception, the essence of the exception is uncertainty about whether a claim will remain alive for any given plaintiff long enough for a district court to certify the class."

*Olson*, 594 F.3d at 582. Plaintiff Dutton stated in his declaration that "[a]t the time that I filed this case in February, although I knew that I would at some point be transferred to the Department of Correction, I did not know when I was being transferred." [DE 21-1]. Since Plaintiff Dutton clearly falls within the exception to the standing requirements, the Court finds that he still has standing to seek injunctive relief on behalf of the proposed class.

### 2. Plaintiff Dutton's Adequacy to Represent the Proposed Class

Next, the Court must determine whether Plaintiff Dutton can still fairly and adequately protect the interests of the proposed class. "To have standing to sue as a *class representative,* the plaintiff must be part of the class and possess the same interest and suffer the same injury as the class members." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (emphasis

added). First, the Court recognizes that there are two other plaintiffs, Copeland and Whitt, who may adequately represent the class and so this is not an issue of whether the class itself has adequate representation. And here, although the controversy is no longer live as to Plaintiff Dutton himself, "it remains very much alive for the class of persons [he seeks] to represent." *Sosna v. Iowa*, 419 U.S. 393, 401 (1975). And, "[s]ince it is contemplated that all members of the class will be bound by the ultimate ruling on the merits, Rule 23(c)(3), the district court must assure itself that the named representative will adequately protect the interests of the class." *Id.* at 403.

"Under Rule 23(a)(4), the adequacy of representation requirement mandates that both the class representative and counsel for the named plaintiff zealously represent and advocate on behalf of the class as a whole." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). When assessing the adequacy of a representative, the Court "must determine whether the named Plaintiffs: (1) have antagonistic or conflicting claims with other members of the class; (2) have a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) have counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Streeter v. Sheriff of Cook Cty.*, 256 F.R.D. 609, 613 (N.D. Ill. 2009). Addressing the first requirement, Plaintiff Dutton does not have conflicting interests with those he is representing as there is no evidence of any unique defense or circumstance related to his claim that would cause conflict between him and the other members of the proposed class. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975). Moreover, Dutton submitted a Declaration stating that he was incarcerated in the Wabash County Jail on several occasions in the past, and thus as a previously held inmate, his interests were aligned with the class members in wanting to reduce the overcrowding in the jail. As for the second requirement, Dutton stated in his Declaration that he is "strongly committed to continuing to try to win this case and to improve the conditions for all

8

prisoners in the Jail." [DE 21-1 at 2]. He said that he feels "very strongly about trying to make sure that other prisoners do not have to be exposed to the conditions to which I was exposed during my time in the Wabash County Jail." *Id*. Dutton also committed to remaining in communication with his attorney and doing whatever is necessary to push the case forward.

"To be adequate, the class representative must maintain only an understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008) (quotation omitted). This is not a difficult burden and Plaintiff Dutton has established this here. *See Murray v. New Cingular Wireless Serv., Inc.,* 232 F.R.D. 295, 300 (N.D. Ill. 2005). And finally, as for the third requirement, the Defendants have not argued that the Plaintiffs' counsel are not adequate representatives. The Court agrees that counsel representing the Plaintiffs is skilled and experienced in this type of litigation and has appeared before this Court in similar circumstances. Thus, the Court finds that the class is adequately represented, and that Plaintiff Dutton will zealously represent and advocate on behalf of the proposed class as a whole.

**B.     Class Certification under Rule 23(a)**

Next the Court must determine if the Plaintiffs have met the requirements for class certification under Rule 23(a). When reviewing whether the requirements have been met, a district court has broad discretion to determine whether certification of a class action lawsuit is appropriate. *Arreola*, 546 F.3d at 794. The United States Supreme Court has made clear, however, that the district court is to perform a "rigorous analysis" to determine whether the prerequisites of Rule 23 are satisfied because actual, not presumed, conformance with Rule 23(a) remains indispensable. *Wal–Mart*, 564 U.S. at 350-51 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160–61 (1982)). The purpose of the "rigorous analysis" is not to test the merits of the claim, however, but to determine whether the claim meets the requirements of Rule 23(a). *See Szabo v.*

*Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001).

Plaintiffs in this case define the proposed class as all persons currently confined, or who will be confined in the future, in the Wabash County Jail. [DE 3 at 1]. For the Court to certify the proposed class, the Plaintiffs must establish that each of the Rule 23(a) elements have been met and that at least one of the Rule 23(b) elements has been satisfied. The Court now turns to examine the Proposed Class under the Rule 23(a) requirements.

1. **Numerosity**

The first requirement under Rule 23(a) is that the purported class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To be impracticable, joinder need not be impossible, but instead must be shown to be inconvenient and difficult. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *Gomez v. Illinois State Bd. of Ed.*, 117 F.R.D. 394, 398–99 (N.D. Ill. 1987).[2] "While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017).

Here, the number of potential class members, the nature of the potential class, as well as judicial efficiency convince this Court that the class is so numerous as to make joinder impracticable. The impracticability of joinder is further enhanced by another two factors. First, the class includes future members, and at this stage there is no way to know who the future members are, which makes joinder inherently impracticable. *See Gomez*, 117 F.R.D. at 399. Moreover, the Court recognizes the judicial inefficiency of attempting to try a case with so many individual

---

[2] When determining if joinder of all class members is impracticable, courts often consider many factors including: the class size; judicial economy arising from the avoidance of a multiplicity of actions; the ease of identification of members of the proposed class; the geographic dispersion of class members; the size of each plaintiff's claim; the financial resources of the class members; the ability of claimants to institute individual suits; any requests for prospective injunctive relief which would involve future class members; and any other factors relevant to the practicability of joining all the class members. Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:6 (2002 & Supp. 2011).

plaintiffs. Second, the inherently transitory nature of the potential class members makes their joinder in a single, non-class suit impossible, because only a portion of the class will have standing to bring their claims at any one time. *See Ind. Prot. and Advocacy Servs. Comm'n v. Comm'r, Ind. Dept. of Corr.*, 2010 WL 1737821 *1 (S.D. Ind. Apr. 27, 2010) ("[B]oth the transient nature of the inmate population and the request for injunctive relief that will also inure to the benefit of future, currently unknowable, class members likewise support a finding that joinder is impracticable."); *see also Olson*, 594 F.3d at 583 (noting that "the plaintiff must show that there will likely be a constant class of persons suffering the deprivation complained of in the complaint.").

The Plaintiffs argue that the numerosity requirement is satisfied because the evidence demonstrates that the proposed class consists of at least 100 persons and the membership of the class is constantly changing. [DE 3 at 1]. They explain that "[i]n addition to its sheer size, the membership of this class is constantly changing as persons enter and are then released from the Jail . . . . [therefore] [t]he class is so numerous that joinder is impracticable." *Id*. While the Defendants dispute the exact number of inmates housed in the jail, they do not contend that the Plaintiffs failed to meet the numerosity requirement. The Court notes that the Plaintiffs supplied no evidence of the number of inmates at the jail, but the Defendants supplied the 2020 Jail Inspection Report, which indicates that the jail has a total of 72 operational jail beds, but that there are currently 67 adult males and 22 adult females incarcerated in the jail. [DE 14-2 at 4]. Therefore, due to its sheer size—approximately 89 inmates—and its membership almost constantly changing, this Court concludes that the proposed class meets the numerosity requirement of Rule 23(a)(1).

   **2. Commonality**

The second requirement under Rule 23(a) is that the plaintiff must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele*

11

*v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998). And "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). The Plaintiffs argue that all class members are subject to the same conditions as a result of the overcrowding in the Wabash County Jail. [DE 4 at 4]. While overcrowding by itself is not a violation of the Eighth Amendment, a constitutional violation is present when the conditions of the institution "deprive inmates of the minimal civilized measure of life's necessities" or when they involve "unnecessary and wanton infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 345-350 (1981). The Seventh Circuit has found that overcrowding that leads to "unwholesome food, medical neglect and continuous threats to prisoners' safety" can "constitute cruel and unusual punishment." *French v. Owens,* 777 F.2d 1250, 1252 (7th Cir. 1985).

Plaintiffs assert that the jail "is old, overcrowded, understaffed, and as a result it is a place where violence between prisoners is common and dangerous conditions prevail." [DE 1 at 1]. They allege that when a jail exceeds its capacity, it is difficult to adequately classify prisoners, which is essential to protecting the safety of both prisoners and staff. *Id*. at 4. For example, "inmates with mental and physical disabilities should be separated from those without those disabilities, prisoners who are prone to be preyed upon should be separated from predators, and prisoners who have had previous problems with each other should be separated." *Id*. The overcrowding leads to "a great deal of tension" between the prisoners as there is little space to maneuver around each other and there are not enough seats and tables for the prisoners to eat their meals. *Id*. The Plaintiffs argue that the prisoners get into more disputes due to the lack of space to store personal property, due to the small number of showers available, and that general tensions are high due to the large number of prisoners being held in a small space. *Id*. at 5. The Plaintiffs also allege that the recreation room, which does not have a toilet or running water, is used to house inmates and prevents other inmates

12

from being able to use it for exercise, which further exacerbates tensions in the jail. *Id*. Finally, the Plaintiffs allege there is insufficient staff to adequately monitor the inmates, which leads to frequent assaults between prisoners and is aggravated by the overcrowded conditions of the jail. *Id*. at 6.

First, the Defendants argue that the Plaintiffs are limited to claims for which they filed grievances in the jail according to the Inmate Grievance Policy. [DE 14 at 9]. They argue that the grievances limit the Plaintiffs to claims based on the lack of recreational opportunities, the insufficient calories in the food, and the single altercation that Plaintiff Whitt took part in. *Id*. In response, the Plaintiffs argue that the grievances are a procedural requirement and "not a substantive limitation on how general or specific a grievance must be that touches on a general problem." [DE 21 at 12]. The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), requires an inmate to fully exhaust his administrative remedies before initiating litigation pursuant to 42 U.S.C. § 1983. The Inmate Grievance policy sheet indicates that all inmates have the right to file a written grievance regarding treatment or conditions in the jail and that each will be investigated and a written report stating the disposition of the grievance will be provided to the inmate. [DE 14-3]. To the extent that there was a reply to the Plaintiffs' grievances, they tend to corroborate the complaints: noting that the jail population is 'always a work in progress' and that they will fix the roof leak. [DE 14-4]. The grievances include complaints of excessive lock down, the amount of food provided, overcrowding of the cells, lack of recreation, altercations due to the overcrowding, a leaky roof, and the inadequate classification of the inmates in the jail. The grievances filed by the Plaintiffs demonstrate their trouble with the conditions caused by overcrowding and, as the Plaintiffs point out, neither the relevant Indiana code, nor the jail's own

grievance policy requires more.³ The inmates have adequately described their grievances such that the jail was put on proper notice of their complaints related to the overcrowding. *See Tyson v. Grant Cty. Sheriff*, 2007 WL 1395563, at *4 (N.D. Ind. May 9, 2007). Moreover, the Seventh Circuit has stated that an inmate need not "lay out the facts, articulate legal theories, or demand particular relief," so long as the grievance objects "intelligibly to some asserted shortcoming." *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002). Thus, the Court finds that the Plaintiffs have satisfied the PLRA exhaustion requirement, they alerted jail staff to many problematic conditions of the jail, and are not limited to the listed shortcomings of their grievances but may proceed based on their general overcrowding claim which affects many different conditions of confinement.

Second, the Defendants argue that the Plaintiffs' proof falls short of establishing commonality. [DE 14 at 10]. The Court notes that the Plaintiffs supplied no evidence of the number of inmates held in the jail, but referenced the Jail Inspection Report from February 2019, which indicated that the Jail exceeded its rated capacity as it housed 108 inmates with an additional 64 inmates being temporarily housed out of county. [DE 1 at 4]. The Plaintiffs also alleged that at public meetings, County Commissioners have "indicated that the Jail is chronically overcrowded, and that the county urgently needs a new Jail." *Id*. In their response, the Defendants supplied the Jail Inspection Report from 2020, which indicates that it has 72 operational jail beds, but that there are currently 89 inmates incarcerated in the jail. The Jail Inspection Report also noted that 86 inmates are housed out of county. [DE 14-2 at 4]. Notably, the Defendants admitted in their brief that "[t]he only common condition which the court can discern is that the Wabash County Jail is

---

³ (h) "All inmates shall have the right to file written grievances regarding treatment of conditions in the jail with the sheriff or his or her designee. Grievances shall be promptly investigated, and a written report stating the disposition of the grievance shall be provided to the inmate. The sheriff shall establish in writing a grievance procedure, which shall be made known and distributed to all inmates upon arrival and initial screening." 210 Ind. Admin. Code 3-1-15.

somewhat overcrowded." [DE 14 at 10]. The Defendants also supplied the Declaration of Sheriff Ryan Baker to refute the Plaintiffs' other allegations about the jail. Sheriff Baker states that no inmates are currently being housed in the recreation room or the library, but then later explained that the Jail "utilize[s] the recreation room or library to isolate those arrestees [screened for COVID-19] if no unoccupied holding cells or segregation cells are available." [DE 14-1 at 2]. Sheriff Baker also stated that physical recreation is offered to inmates on a daily basis "by way of utilizing the recreation room," but that few take advantage of that opportunity. *Id.* at 3. Finally, Sheriff Baker explained that in a six-month period, the jail recorded ten fights among the inmates, "which is not a high percentage for the Wabash County Jail historically." *Id.*

Here, the Court agrees that the Plaintiffs have not provided sufficient evidence for it to consider when deciding whether to certify the class. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349-50. Moreover, the Seventh Circuit has stated that "[o]n issues affecting class certification, however, a court may not simply assume the truth of the matters as asserted by the plaintiff." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements, *see*, *e.g., Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir. 1984) and they must demonstrate each requirement is met by a preponderance of evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2d Cir. 2008). And that if there are material factual disputes, a court must "receive evidence . . . and resolve the disputes before deciding whether to certify the class." *Szabo*, 249 F.3d at 676. At this time, the Plaintiffs have failed to carry their burden in supplying adequate evidence to support class certification. In bringing this motion, the Plaintiffs supplied little evidence for the Court to consider. The Court reviewed the allegations included in the complaint and the memorandum supporting the motion but notes that the Plaintiffs provided little else. The

exhibits supplied by the Defendants in response to the motion show that Wabash County Jail has a history of being over capacity, which, depending on the extent of the overcrowding, could support the Plaintiffs' allegations of lack of recreation, not enough beds, and high tension and stress among the inmates as alleged by the Plaintiffs. The Defendants' evidence also demonstrated that there have been a number of fights over a period of six months, and that the recreation room is used to house overflow inmates or inmates in isolation. [DE 14-1; 14-2]. The Jail Inspection Report raises questions as to whether there is sufficient staffing of the jail—the Report indicates that the required number of staff was determined by a study completed in 2014. [DE 14-2 at 10]. The Report also shows that the meals served in the jail are approved by a qualified dietician, but that the menu was last approved in January of 2019. *Id*. at 8. The Plaintiffs' asserted allegations and the evidence submitted by the Defendants raise more questions than answers. While the Court understands that it could conduct an evidentiary hearing, the Court declines to do so as further discovery may facilitate the Plaintiffs in acquiring the necessary evidence.[4]

Here, the Court is unable to determine whether the suit is appropriate for class certification at this stage due to the meager evidence supplied by the Plaintiffs to support their motion. At this point in time, "some discovery may be necessary to determine whether a class should be certified." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). Additional evidence that includes affidavits from potential class members, data from the jail itself, or deposition testimony would significantly enhance the analysis that is required under Rule 23(a).

---

[4] The Court notes several cases in which the motion for class certification was granted where the plaintiffs alleged unconstitutional conditions in a jail due to overcrowding. *See Baker v. McCorkle*, 2019 WL 5190974, at *3 (S.D. Ind. Oct. 15, 2019) (explaining that the class was later decertified due to inadequacy of class counsel); *Richardson v. Monroe Cty. Sheriff*, 2008 WL 3084766, at *1 (S.D. Ind. Aug. 4, 2008); *Tyson v. Grant Cty. Sheriff*, 2007 WL 1395563, at *11 (N.D. Ind. May 9, 2007). The Court also recognizes that other jurisdictions have historically held evidentiary hearings to determine factual issues still in dispute at this stage. *See Huerta v. Ewing*, 2017 WL 2198632, at *1 (S.D. Ind. May 19, 2017); *Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 590 (N.D. Ill. 2015) (noting that while several courts have held evidentiary hearings prior to deciding a class certification motion, such hearings are not required).

*See Flood v. Dominguez*, 270 F.R.D. 413, 416 (N.D. Ind. 2010); *Baker v. McCorkle*, 2017 WL 2443287, at *8 (S.D. Ind. June 6, 2017) (taking the motion for class certification under advisement and asking for supplemental briefing due to the failure of the plaintiff to demonstrate that he satisfied the requirements of Rule 23(a)(4)); *Par. v. Sheriff of Cook Cty.*, 2008 WL 4812875, at *3 (N.D. Ill. Oct. 24, 2008) (noting that it requested the plaintiffs submit additional evidence of numerosity and the plaintiffs submitted over 180 affidavits from putative class members); *Olson v. Brown*, 284 F.R.D. 398, 403 (N.D. Ind. 2012) (noting the parties' stipulated to jail statistics and the plaintiffs filed 53 affidavits from inmates detailing their experience in the jail). For comparison, the Ninth Circuit upheld the certification of a class of inmates alleging systemic Eighth Amendment violations in part due to "the substantial record compiled by the plaintiffs, which include[d] four expert reports, hundreds of internal ADC documents, depositions of ADC staff, and inmate declarations . . . ." *Parsons v. Ryan*, 754 F.3d 657, 662 (9th Cir. 2014). This Court also previously certified a class where "the affidavits before the court [were] sufficient to satisfy the Court's rigorous analysis that the jail ha[d] a jail-wide policy of restricting adequate law library access, and that this is the policy the class asks the Court to enjoin." *Olson*, 284 F.R.D. at 408–09.

When evaluating class certification claims, courts analyze whether the plaintiffs provided sufficient evidence of the injury and whether it is common to other members of the class. *See Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (noting that when factual disputes are related to issues vital to certification, the court must receive evidence and resolve the disputes before deciding to certify the case); *Walker v. Health & Hosp. Corp. of Marion Cty.*, 2016 WL 7179370, at *14 (S.D. Ind. Dec. 9, 2016) (noting that while the plaintiffs claimed they worked through meal breaks and were not compensated, "they failed to provide sufficient evidence that other employees had the same experience."). Even if the Plaintiffs are alleging more "systemic deficiencies" at the Wabash County Jail, they have failed to provide any evidence in the form of a

policy, practice, or procedure that would demonstrate that argument. "If plaintiffs can present classwide evidence that a prison is engaging in a policy or practice which rises to the level of a systemic indifference, then we can identify 'conduct common to members of the class' which advances the litigation." *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 557 (7th Cir. 2016). Ultimately, "[t]he party seeking class certification bears the burden of showing by a preponderance of the evidence that certification is proper." *Orr*, 953 F.3d at 497 (citing *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015)). The Plaintiffs have failed to carry that burden at this time, but the Court will allow them an opportunity to supplement the record. Therefore, the Court concludes that the commonality requirement of Rule 23(a)(2) has not been met.

### 3. Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the court must find that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The Seventh Circuit has summarized the typicality analysis:

> A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory. Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.

*Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008). Thus, often the typicality requirement will overlap with the commonality requirement. *Schilling v. PGA Inc.*, 293 F. Supp. 3d 832, 838 (W.D. Wis. 2018). The Court recognizes that this element is closely intertwined with the commonality element. If the proposed class has been subjected to the same practice as the Plaintiffs—overcrowding of the jail—then this element will be met. Since it is unlikely that only *some* inmates will suffer from the conditions or effects of overcrowding and not others, the Court finds that it is likely that this requirement has been met. The Court will abstain from deciding currently but will instead wait to determine whether this requirement has been met until after the

Plaintiffs have had more time to complete discovery and find further evidence for the Court to consider.

### 4. Adequacy of Representation

Finally, Rule 23(a)(4) requires that the Plaintiffs will fairly and adequately protect the interests of the class. This determination has two facets. First, Plaintiff must not have interests antagonistic to the class. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). Second, Plaintiff's counsel must be qualified, experienced, and able to effectively conduct the litigation. "An adequate class representative must have an understanding of the basic facts underlying the claims, some general knowledge of the case, and a willingness and ability to participate in discovery." *Pruitt v. Pers. Staffing Grp., LLC*, 2020 WL 3050330, at *4 (N.D. Ill. June 8, 2020). Following the first section of this Order, the Court finds Plaintiff Dutton along with Plaintiffs Copeland and Whitt to be adequate representatives of the class. There is no evidence of their inadequacy or that they have any unique defenses or circumstances that might cause conflict between them and the other members of the proposed class. The Plaintiffs all understand the basic facts underlying their claims, most notably the conditions they experienced as a result of the alleged overcrowding of the jail. Moreover, there are no assertions that the Plaintiffs Copeland or Whitt are unwilling or unable to participate in discovery and Plaintiff Dutton declared his commitment to this case. Finally, the Defendants do not contest that the Plaintiffs and the class are represented by experienced counsel, nor do they dispute that either Plaintiffs Copeland or Whitt will vigorously pursue the class' interests as well as their own. Therefore, the Court finds that the Plaintiffs meet the requirements of Rule 23(a)(4).

### III.   CONCLUSION

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties,

common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350. Merely alleging that each inmate suffers from a constitutional violation, or merely claiming that overcrowding the jail facility potentially violates inmates' constitutional rights, without pinpointing how the violation affects all potential class members, is not enough. Thus, having considered the parties' arguments and having reviewed the record of the case up to this point, the Court will deny the Motion for Class Certification without prejudice to refiling and the submission of additional evidence. The Court does this recognizing that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed.R.Civ.P. 23(c)(1)(C). But "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Rule 23, Advisory Committee Notes, 2003 Amendment. If the Plaintiffs can provide sufficient evidence to meet the requirements of Rule 23(a), they are encouraged to file that evidence with a renewed motion for class certification. Therefore, based on the foregoing, the Court DENIES the Plaintiffs' Motion for Class Certification without prejudice. [DE 3].

    SO ORDERED.

    ENTERED: September 16, 2020

                                        /s/ JON E. DEGUILIO
                              Chief Judge
                              United States District Court