UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JERRY COPELAND, *et al.*,

    Plaintiffs,

    v.

WABASH COUNTY, INDIANA, *et al.*,

    Defendants.

Case No. 3:20-CV-154 JD

**OPINION AND ORDER**

    Plaintiffs Jerry Copeland and John Whitt brought this lawsuit on their own behalf and on behalf of a class of those similarly situated for declaratory and injunctive relief under § 1983 against Wabash County, Indiana, and the Wabash County Sheriff. The parties have requested that this Court find their proposed class action settlement (the "Stipulation") fair, reasonable, and adequate. Plaintiffs have also moved for an award of attorneys' fees and costs. For the reasons discussed below, the Court finds that the terms of the Stipulation are fair, reasonable, and adequate. Additionally, the Court finds that the attorneys' fees requested are reasonable and grants Plaintiffs' motion for attorneys' fees and costs.

**A.    Procedural Background**

    Plaintiffs filed this lawsuit on February 19, 2020. The underlying allegations of their complaint have been set forth in the Court's prior orders and need not be recounted here. On May 10, 2021 the Court certified the case as a class action under Fed. R. Civ. P 23(a) and (b)(2), approving a plaintiff class defined as:

>All persons currently confined, or who will in the future be confined, in the Wabash County Jail.

(DE 35.) On August 20, 2021, Plaintiffs filed their Stipulation with the Defendants and moved for approval of the proposed notice of settlement and to set the matter for a fairness hearing. (DE 39.) Plaintiffs also moved for an award of $20,000 in attorneys' fees for class counsel. (DE 40.)

The Stipulation makes clear that the defendants do not concede and continue to deny any wrongdoing in this matter, and plaintiffs agree that the Stipulation is not an admission of any kind and imposes no liability on the defendants and the defendants' agents, employees, or officers. The Stipulation is divided into a long-term agreement and a short-term agreement. (DE 38 at 4, 6.) In the long-term, Defendants have agreed to construct a new Wabash County Jail facility, which will have between 250 and 300 permanent beds. (*Id.* ¶ 14, 17.) It is anticipated that the new jail will be ready for occupancy in the first quarter of 2023.[1] (*Id.* ¶ 18) The parties agree that if events occur necessitating modification, this schedule may be amended. (*Id.*) In such an event, defendants will notify class counsel at the earliest opportunity. (*Id.* ¶ 18.)

Parties further agree in the Stipulation that the new jail should have sufficient staff to ensure the health and safety of detainees. (*Id.* ¶ 19.) Prior to the jail's opening, the Defendants will have an expert prepare a written staffing analysis and, within 14 days of receiving it, provide class counsel with a copy. (*Id.*) Defendants will attempt to fully fund the staff positions recommended in the staffing analysis, but if they believe they cannot employ the recommended staff within six months of the opening, they agree to provide class counsel a proposed schedule for funding and hiring additional positions. *(Id.)* Prior to housing any detainees, an inspector from the Indiana Department of Correction's County Jail Services Division must determine that

---

[1] Parties informed the Court at the fairness hearing that ground has already been broken on this new facility.

the new jail meets all necessary requirements of the Indiana County Jail Standards and approve its structural readiness. (*Id.* ¶ 20.)

In the short-term agreement, parties agree that all efforts will be made to keep the existing jail's population at or below 90. (*Id.* ¶ 22.) In order to accomplish this, the Wabash County Sheriff will, as necessary, house detainees in alternate facilities. (*Id.* ¶ 23.) If the population of the Jail exceeds 90 for more than 5 consecutive days, the Sheriff has 24 hours to notify (a) all Wabash County judges with criminal jurisdiction; (b) the Wabash County Prosecutor; (c) the president of the Wabash County Commissioners; (d) the president of the Wabash County Council; and (e) class counsel. (*Id.* ¶ 24.) In such an event, the Sheriff must also ask the judges to release a sufficient number of detainees to reduce the Jail's population to 90 or fewer detainees. (*Id.* ¶ 25.)

Parties also agree that absent good cause detainees will only be housed in cell blocks and holding cells. (*Id.* ¶ 26.) The Sheriff will maintain a log identifying any instance where a prisoner is housed outside of the cell blocks for longer than 48 hours in each calendar month. (*Id.*) This log will then be submitted to (a) all Wabash County judges with criminal jurisdiction; (b) the Wabash County Prosecutor; (c) the president of the Wabash County Commissioners; (d) the president of the Wabash County Council; and (e) class counsel. (*Id.*)

If a permanent bed cannot be assigned to a detainee, parties agree that a mattress and either a free-standing bunk bed or portable bed will be provided. (*Id.* ¶ 27.) If a detainee is housed in a part of the jail without direct access to running water and a bathroom, they will be offered restroom access at least once every 60 minutes, and may request restroom access at any time, which should be provided within 15 minutes absent an emergency. (*Id.* ¶ 28.) If a prisoner is temporarily housed without direct access to running water and the lavatory, a request for a

shower must be satisfied as soon as possible, but no later than within 8 hours. (*Id.* ¶ 29.) Every Monday, class counsel must receive a report stating the population of the existing jail for each day in the prior week. (*Id.* ¶ 30.) Population is to be surveyed once daily by Defendants at approximately the same time. (*Id.* ¶ 30.)

The parties agree that all detainees in the existing jail will be offered and provided at least three hours of indoor recreation per week. (*Id.* ¶ 31.) If the detainees do not receive the requisite hours, this must be reported within one week to class counsel. (*Id.*) The parties also agree that jail staff will perform an in-person, documented visual check of each cell block at least once every 60 minutes. (*Id.* ¶ 32.) Furthermore, the Stipulation provides that all efforts will be made to maintain current staffing positions for correctional staff absent a staffing analysis conducted by an expert using accepted correctional standards. (*Id.* ¶ 33.)

Additionally, the agreement provides that there must be certain progress reports filed by the defendants. (*Id.* ¶ 34.) These progress reports will summarize relevant developments in the prior 90-day period and the first must be filed with the Court no later than 90 days after this order is entered. (*Id.*) Each report will include at least:

    a. A summary of the current state of development/construction of the new Jail.

    b. The population of the existing Jail on the date of the report.

    c. The current staffing of the existing Jail, including the number of full-time and part-time employees, and any positions that have been allocated, but are unfilled.

    d. The number of days in the preceding three months that the population in the existing Jail exceeded 90 persons.

    e. Whether detainees have been offered the three hours a week of recreation in the existing Jail's indoor recreation area as stated above, and if not, the cell blocks not offered that amount of recreation and the reasons why.

    f. A summary of all documented reports of detainee violence, including violence perpetrated on detainees and jail staff.

(*Id.*) Defendants have also agreed to pay class counsel attorney's fees and costs in the total amount of $20,000. (*Id.* ¶ 35.) Attorneys for each side signed the Proposed Stipulation. (DE 42-1.)

On October 7, 2021, the Court preliminarily approved the Stipulation, subject to the right of any class member to challenge the fairness, reasonableness, or adequacy of its terms at the fairness hearing. (DE 43.) In that same order, the Court approved the proposed notice of settlement and fairness hearing, with minor alterations, and scheduled the fairness hearing for December 20, 2021. (*Id.*) Following a joint motion, the Court ordered that the fairness hearing would be held telephonically. (DE 50.)

The fairness hearing proceeded as scheduled, pursuant to Federal Rule of Civil Procedure 23(e)(2). Notice of the hearing was properly given to jail prisoners and also posted in prominent locations in each living area of the jail (a method previously approved by the Court). At the fairness hearing, Defense Counsel confirmed that they hand delivered a copy of the notice to each prisoner on October 25, 2021, and translated a copy when it was determined that one prisoner only spoke Spanish. Class counsel has received no objections to the notice, and no one appeared at the fairness hearing to object on the record. Only two comments were received from purported class members, which took issue with the fact that damages were not being sought. However, as the Court explained in a previous order, these individualized damages claims would likely not have survived class certification. (DE 51.) Additionally, because this class action only seeks declaratory and injunctive relief, class members may still bring subsequent individual claims seeking damages based on the same events. (DE 51 at 2.) Accordingly, the Court does not believe these comments constitute objections to the proposed settlement.

**B.    Discussion**

"In order to evaluate the fairness of a settlement, a district court must consider 'the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement.'" *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)).

The Court first considers the strength of the plaintiffs' case balanced against the settlement terms. This is typically considered the most important factor in determining whether a class action settlement is fair. *Synfuel*, 463 F.3d at 653 ("The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." (internal quotations omitted)). Here, the settlement terms provide the class with exactly what this lawsuit set out to obtain: remedying the "old, overcrowded, and understaffed" conditions of the current Wabash County Jail (DE 1 at 1), both in the long-term with a new facility and in the short-term by setting a cap on population and providing other requirements which help to alleviate the Jail's dangerous conditions. Counsel represented at the fairness hearing that this was even more than they might be able to get through trial given the limitations on relief the Court can order through the Prison Litigation Reform Act. Accordingly, the Court believes that this factor heavily weighs in favor of finding that the settlement is fair.

The stage of proceedings and amount of discovery completed also weighs in favor of finding the settlement to be fair, reasonable, and adequate. While it appears that plaintiffs have

6

not yet taken depositions, class counsel has received significant information about the conditions of the jail, as shown by the numerous affidavits submitted to the Court. (Attached Exhibits, DE 25.) Defense counsel also represented at the fairness hearing that class counsel had met with the Sheriff and that Defendants have broken ground on the new jail and have taken other steps to begin complying with the settlement agreement. The fact that counsel has obtained substantial information about the jail's conditions, explored their litigation options, and have met with the defendants to explore compliance with the settlement, all weighs in favor of finding the settlement to be fair, as it indicates that plaintiffs have been able to evaluate the appropriate settlement value of the litigation.

The cost of further litigation in the absence of a settlement also weighs in favor of finding it to be fair, reasonable, and adequate. Without a finding that the Stipulation is fair, class counsel represents that the parties would need to engage in discovery by conducting depositions, summary judgment practice, and ultimately a trial, which would certainly increase the length of litigation, as well as the cost. Extending this litigation would also prolong obtaining a remedy to the overcrowded, dangerous, and potentially unconstitutional conditions at the Jail. Prisoners who would immediately benefit from the short-term conditions provided in the stipulation, would instead have to wait for relief. The Court believes that such a prospect weighs heavily in favor of finding the settlement fair, reasonable, and adequate.

Additionally, no objections have been made to the Stipulation, and counsel represent that the settlement was reached through arm's-length negotiations and without any collusion. Furthermore, the settlement has an inherently positive impact on the public interest. The Stipulation seeks to remedy the Jail's overcrowded conditions, which has caused extremely poor living standards for the prisoners. The Court believes that without being corrected, the conditions

in the Wabash County Jail would likely pose a threat to the prisoners' constitutional rights, because overcrowded conditions can "lead[] to deprivation of food, proper sanitation, or medical care . . . ." *Jensen v. County of Lake*, 958 F. Supp. 397, 406 (N.D. Ind. 1997) (citing *Rhodes v. Chapman,* 452 U.S. 337 (1981).

Lastly, class counsel indicated at the fairness hearing that they believed that this outcome was fair, reasonable, and adequate. This weighs in favor of approving the settlement, especially when considered in light of class counsel's extensive experience litigating class actions. *See, e.g.*, *Gutierrez v. City of E. Chicago*, No. 2:16-CV-111 JVB, 2016 WL 5816804, at *1 (N.D. Ind. Oct. 5, 2016) (class action with Mr. Falk as counsel); *Young v. City of Indianapolis*, No. 117CV02818TWPMJD, 2018 WL 953083, at *2 (S.D. Ind. Feb. 16, 2018) (same); *Hizer v. Pulaski Cty*, No. 3:16-CV-885-JD, 2018 WL 339197, at *1 (N.D. Ind. Jan. 8, 2018) (same).

In addition, the Stipulation includes an award of $20,000.00 made payable to Plaintiffs in order to satisfy all claims for attorneys' fees and costs accruing as of the date of this Order. Contemporaneous with the instant joint motion to find the settlement fair, reasonable, and adequate, Plaintiffs filed a motion for these attorneys' fees and costs. (DE 46.) Even though "no attorney's fees were charged to a client, [this does not] preclude the award of attorney's fees to the organizations that did the legal work once the plaintiffs prevailed." *Wirtz v. City of South Bend, Ind.*, No. 3:11-CV-325, 2012 WL 589454, at *1 (N.D. Ind. Feb. 17, 2012) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("[R]easonable fees" under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.")). Courts use a "lodestar" method of calculating a reasonable amount of fees. *Gisbrecht v. Barnhart*, 535 U.S. 789, 801–02 (2002).

The lodestar is calculated as the number of hours reasonably expended on a case multiplied by a reasonable hourly rate for each attorney. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Mr. Falk represents that his hourly rate is typically $575 (DE 40-1 at 2), while Mr. Pactor represents that his hourly rate is $375. (DE 40-2 at 2.) As recently as 2018, the Court approved an attorney fee award at a rate of $201.68 for Mr. Falk's work in a class action certified under 23(b)(2). And, in 2012, this Court approved a local rate of $400.00 per hour for Mr. Falk's work in a class action based on civil rights. *See Wirtz*, 2012 WL 589454, at *2. When the total hours Mr. Falk and his co-counsel spent on this case are divided against the flat amount of $20,000.00 sought for fees and costs, the resulting approximate hourly rate for either attorney is less than both of these amounts previously approved ([$20,000.00 - $400 costs]/100.68 total hours = $194.68 per hour). This hourly rate is also less than the maximum hourly rate of $232.50 under the Prison Litigation Reform Act.[2] Based on the result obtained, the market for similar legal services, the work necessary to resolve the litigation, and Counsels' experience, the award of $20,000.00 is more than reasonable. *See, e.g.*, *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007).

Pursuant to Rule 23(e), the Court finds that the settlement is "fair, reasonable and adequate." While every settlement is a compromise to some extent, this settlement obtains significant relief for the class, providing for substantial improvements to the Wabash County Jail's conditions in the short-term, while also providing for the construction of a new facility in the long-term. As described above, there was thorough investigation conducted by class counsel

---

[2] Under 42 U.S.C. § 1997e(d)(3), the maximum hourly rate under the PLRA is 150 percent of the hourly rate established under section 3006A of title 18 for payment of court-appointed counsel. The rate imposed by Congress under 3006A is currently $155 an hour, making the PLRA rate $232.50 an hour. *See* Criminal Justice Act Hourly Rates of Compensation as Imposed by Congress, http://www.ca7.uscourts.gov/criminal-justice-act/cjarates.htm (last visited Jan. 3, 2022).

9

and the settlement was reached through an arms-length negotiation, suggesting it was procedurally fair. The Court believes the Stipulation's substantive terms will provide significant relief to the Class, helping to alleviate the overcrowdedness of the Wabash County Jail and improving the living conditions of all current prisoners who reside there. This is not only a fair outcome, but an admirable one, which will help ensure that individual constitutional rights are not infringed.

**C.     Conclusion**

For the foregoing reasons, the Court GRANTS the joint motion to find the Settlement Agreement fair, reasonable, and adequate (DE 47) and GRANTS the motion for attorneys' fees and costs. (DE 46; DE 39.) Pursuant to Rule 23(e) of the Rules of Civil Procedure, the Court ORDERS as follows:

1.      The parties' Stipulation (DE 38) is deemed fair, reasonable, and adequate, and in the best interests of the settlement class.

2.      The Court APPROVES the application for an award of attorneys' fees and expenses in the amount of $20,000.00, made payable to class counsel, which the Court finds to be reasonable.

3.      This court retains continuing and exclusive jurisdiction over the parties and all matters relating to this case should issues arise regarding the satisfaction of the short-term and long-term agreement. However, during this time, this case will be removed from "active status."

4.      The Court will receive periodic status reports by the parties, as outlined in the Settlement Agreement.

5. The case shall be dismissed thirty days after the new jail is occupied. Parties should file a joint notice with the Court once the new Jail is occupied for 30 days.

SO ORDERED.

ENTERED: January 3, 2022

              /s/ JON E. DEGUILIO
             Chief Judge
             United States District Court